# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Dec 16, 2022
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
information associated with the cellular telephone assigned call number ) Case No. 22 MJ 207
414-502-6877, ("the Account"), that are stored at premises controlled by T-Mobile )
("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. 2219 | Carjacking |
| 18 U.S.C. 924(c) | Use, brandishing, and discharge of a firearm during a crime of violence |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *) is requested under*
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David Bianchi, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

Date: 12/16/2022

*Judge's signature*

City and state: Milwaukee, WI    Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF

# AN APPLICATION FOR A SEARCH WARRANT

I, David Bianchi, being first duly sworn, hereby depose and state as follows:

# INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **414-502-6877** ("the SUBJECT PHONE") that is stored at premises controlled by Sprint, a wireless telephone service provider owned by T-Mobile, a wireless service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since September, 2020. Since then, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force. This Task Force is a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have assisted in criminal investigations, participating in surveillance, interviews, and debriefs of arrested subjects. As a result of this

training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the investigation to date, I submit that there is probable cause to believe that the user of the cellular device with telephone number **414-502-6877** conspired to commit and committed two armed carjackings in Milwaukee, Wisconsin, on August 26, 2022 and August 29, 2022, in violation of Title 18, United States Code, §§ 2119 (Carjacking), and 924(c) (brandishing of a firearm during a crime of violence). There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

### August 26, 2022 – Nissan Altima

5. On August 26, 2022 at approximately 12:50 AM, the victims, D.P. (XX/XX/2001) and S.F. (XX/XX/1993), parked their 2019 Nissan Altima in the alley behind their residence at XXXX S. 15th Street, Milwaukee, Wisconsin. D.P., who was sitting in the driver seat, observed a silver Buick sedan traveling northbound in the alley toward their vehicle. S.F. exited the vehicle at which time he was approached by an unknown individual (Altima Subject 1) who pointed a handgun at him and demanded his property. S.F. provided Altima Subject 1 the key fob for the Nissan Altima and his iPhone 13 cellular telephone. At the same time, D.P. was approached by a second unknown individual (Altima Subject 2) who pointed a handgun at her and demanded she exit her vehicle. The second individual then demanded D.P.'s property. D.P. provided the unknown

2

individual her iPhone 13 cellular telephone. Both subjects were observed exiting the silver Buick sedan before approaching the victims.

6. After obtaining S.F.'s and D.P's property, Altima Subject 2 entered the driver door and Altima Subject 1 entered the front passenger door of S.F.'s vehicle. The subjects then fled northbound in the alley in her vehicle.

7. Inside D.P.'s vehicle were three firearms belonging to S.F.:

> Mossberg 12 gauge shotgun (unknown serial number)
> Century Arms, NAK 9 AK style pistol (S/N R0N2049054)
> Ruger .357 magnum revolver (S/N 1541-90592)

8. Earlier in the night, at approximately 12:36 AM, S.F. and D.P. observed the silver Buick sedan while they were parked at a gas station at 1227 W. Oklahoma Avenue, Milwaukee, Wisconsin. Two subjects exited the Buick and followed S.F. into the gas station as he purchased a drink. S.F. and D.P. identified the silver Buick sedan as the suspect vehicle used in the robbery.

9. Altima Subject 1 was described as a black male, 20-22 years of age, thin build, approximately 5' 08", wearing a black hooded sweatshirt with the hood up, armed with a black handgun.

10. Altima Subject 2 was described as a black male, 20-22 years of age, thin/medium build, approximately 5' 08", wearing a red "Bape" camouflaged hooded sweatshirt with the hood up, armed with a black handgun.

11. Altima Subject 3 (observed by D.P. at the gas station but not observed by either victim during the robbery) was described as a white male, 30-35 years of age, unknown clothing.

3

Case 2:22-mj-00207-WED    Filed 12/16/22    Page 4 of 16    Document 1

## Recovery and Processing of Nissan Altima

12. On August 26, 2022 at about 3:00 p.m., officers with the Milwaukee Police Department located and recovered the Nissan Altima taken in the armed robbery on August 26, 2022. The Nissan Altima was parked on the street in front of 3852 N. 19th Place, Milwaukee, Wisconsin. Milwaukee Police Department Forensics Examiners processed the Nissan Altima for DNA and latent fingerprints. The latent fingerprints were processed through the Automated Fingerprint Identification System (AFIS). Latent fingerprints taken from the exterior rear driver's door, the exterior of the driver's door above the door handle, and the passenger side quarter panel were identified as belonging to Kartiae TATE (XX/XX/1995).

13. During a search of the vehicle, detectives with the Milwaukee Police Department located S.F.'s Century Arms, NAK 9 AK style pistol on the rear passenger side floorboard. The firearm was processed for DNA and latent fingerprints. On September 01, 2022, the latent fingerprints were processed through AFIS. Latent fingerprints taken from the right side of the Century Arms dust cover were also identified as belonging to TATE.

## August 29, 2022 – Acura MDX

14. On August 29, 2022 at approximately 1:15 AM, the victims, E.M. (XX/XX/1986) and M.M. (XX/XX/1992) parked their 2016 Acura MDX in front of their residence at XXXX W. Forest Home Avenue, Milwaukee, Wisconsin. As E.M. and M.M. were retrieving their children from the vehicle, M.M. observed a gray Buick sedan drive south past them. The gray Buick sedan then conducted a U-turn in the road and again drove past the victims before coming to a stop north of their vehicle.

15. M.M. was approached by an unknown subject (Acura Subject 1) who exited the Buick sedan and was armed with a handgun. Acura Subject 1 pointed the handgun at M.M. and

4

Case 2:22-mj-00207-WED    Filed 12/16/22    Page 5 of 16    Document 1

demanded, "Give me the car keys, bitch" several times. M.M. started calling E.M.'s name at which time Acura Subject 1 grabbed the car keys from her hand.

16. At the same time, E.M., who was retrieving his daughters from the rear seat of the vehicle, heard M.M. yell his name. When he looked up, he observed Acura Subject 1 pointing a handgun at M.M. and an unknown subject (Acura Subject 2) pointing a handgun at him. Acura Subject 2 stated, "Give me whatever you have" at which time E.M. grabbed his wallet from his shorts pocket and handed it to Acura Subject 2.

17. Acura Subject 1 then entered the driver seat and Acura Subject 2 entered the front passenger seat of E.M.'s vehicle. Both subjects then fled south on S. 40th Street in the victim's vehicle at which point the gray Buick sedan fled east on W. Forest Home Avenue.

18. Acura Subject 1 was described as a black male, late teens to early 20's, slender build, approximately 5' 08", dark complexion, wearing a black hooded sweatshirt, a ski mask with eyes and mouth showing, and armed with a black handgun with an extended magazine.

19. Acura Subject 2 was described as a black male, medium build, dark complexion, wearing dark clothing and a black ski mask, armed with a black handgun.

20. The third subject and driver of the Buick sedan was not observed by either victim.

### August 29, 2022 – Nissan Rogue

21. On August 29, 2022 at approximately 2:50 AM, the victim, C.P. (XX/XX/1978) parked his 2017 Nissan Rogue in the parking spaces west of his residence at XXX W. Mineral Street, Milwaukee, Wisconsin. As C.P. was walking toward the front door of his building, he observed a silver sedan (later identified as a silver Buick Regal) traveling east on W. Mineral Street. The silver Buick abruptly pulled over and an unknown individual (Rogue Subject 1) exited

5

Case 2:22-mj-00207-WED    Filed 12/16/22    Page 6 of 16    Document 1

the front passenger seat of the vehicle. Rogue Subject 1 walked toward C.P. with his hands in the pocket of his hooded sweatshirt which C.P. found to be suspicious.

22. When C.P. reached the front door of his building and placed the key into the handle, Rogue Subject 1 turned and began to run toward C.P. C.P. was able to open the door and attempted to shut it behind him, however, Rogue Subject 1 was able to reach the door and prevented him from closing it. Rogue Subject 1 reached in the front door and pointed a black handgun at C.P.'s face while stating, "I'm gonna shoot you."

23. C.P. then stepped back and got down on his knees in the hallway. C.P. placed both hands in the air and looked toward the ground. Rogue Subject 1 then stepped inside and stated, "Give me your wallet." As C.P. was retrieving his wallet from his pocket, Rogue Subject 1 stated, "I should shoot you for trying to close the door." Rogue Subject 1 then took C.P.'s wallet and fled out the front door.

24. C.P. realized that he never took his keys out of the front door and walked to retrieve them. He realized his keys were no longer in the door and looked west at which time he observed the silver Buick following his vehicle onto the interstate on-ramp.

25. Rogue Subject 1 was described as a black male, 18 to 25 years of age, approximately 6' 00" to 6' 02", approximately 200 to 220 pounds, athletic build, short natural black hair, wearing a black hooded sweatshirt, black jogger style sweatpants, black shoes, and armed with a black full sized semi-automatic handgun.

**Arrest of Terrence Bennett and Larry Semons**

26. On August 29, 2022 at approximately 12:53, FBI Task Force Officer (TFO) Keck was contacted by a Milwaukee Police Officer who located the stolen Acura MDX that was taken

6

in the carjacking the previous night. TFO Keck and TFO Strasser responded to the area of 6030 N. 40th Street, Milwaukee, Wisconsin to conduct surveillance.

27. While on surveillance, TFO's observed a silver Buick sedan, which matched the description of the silver Buick sedan used in the three previous carjackings, drive north on N. 40th Street and park in front of the apartment building at 6030 N. 40th Street. The driver of the Buick exited the vehicle and spoke with an unknown individual before both parties entered the apartment building.

28. A short time later, an unknown male re-entered the Buick sedan and drove it around the back of the apartment building. The Buick was later located parked on the rear slab of the apartment building in the alley. A check of the Buick's vehicle identification number (VIN) showed that the vehicle was previously stolen in Milwaukee. Both the Acura MDX and the Buick Regal were recovered by the Milwaukee Police Department.

29. At approximately 4:15 PM, officers with the Milwaukee Police Department approached the apartment building and made contact with the four apartment units in the building. TFO Keck was standing at the back of the building and observed a male exit the rear door to Apartment 1. He was observed to be the same male who spoke to the driver of the Buick sedan when it was parked in front of the building and was identified as Terrence BENNETT (XX/XX/1996).

30. Officers then located the lessee of Apartment 1, M.E., who consented to a search of her apartment. Inside the apartment officers located an individual later identified as Larry SEMONS (XX/XX/1996). In the living room closet, officers also located the Ruger .357 magnum that was taken during the carjacking of the Nissan Altima on August 26, 2022. The key fob to the Buick was located in the kitchen trash can.

7

Case 2:22-mj-00207-WED   Filed 12/16/22   Page 8 of 16   Document 1

### Forensic Processing of Acura MDX and Buick Regal

31. On August 30, 2022, Milwaukee Police Department Forensics Examiners processed the Acura MDX and Buick Regal that were recovered the previous day for DNA and latent fingerprints. The latent fingerprints were processed through AFIS.

32. Latent fingerprints taken from the driver's door window and rear passenger door window of the Acura MDX were identified as belonging to Terrence BENNETT.

33. A latent fingerprint taken from the trunk lid of the Buick Regal was identified as belonging to Terrence BENNETT.

### Custodial Interview of Terrence BENNETT

34. On August 30, 2022, detectives with the Milwaukee Police Department conducted Mirandized interviews with Terrence BENNETT. During one of the interviews, BENNETT admitted to being present in the Buick Regal during the August 26, 2022 carjacking of the Nissan Altima, however, he denied possessing a firearm during the incident.

35. BENNETT was shown a still photograph from surveillance video at the gas station at which he was originally observed by the victim, D.P. BENNETT identified himself as the individual wearing a red "Bape" hooded sweatshirt, which matches the description of Altima Subject 2.

### Custodial Interview of Larry SEMONS

36. On August 30, 2022, detectives with the Milwaukee Police Department conducted Mirandized interviews with Larry SEMONS. During the interviews, SEMONS admitted to participating in the August 26, 2022 carjacking of the Nissan Altima. SEMONS admitted to possessing a firearm during the incident and identified BENNETT, to whom he referred as "Taz",

8

as the second gunman. SEMONS also identified Kartiae TATE as the driver of the Buick Regal during the incident and told detectives that TATE provided him with the firearm that was used. SEMONS advised that he, BENNETT, and TATE followed the Nissan Altima from a gas station to a Walgreen's and ultimately to the victim's residence where the carjacking took place.

37. When questioned about the August 29, 2022 carjacking of the Acura MDX, SEMONS admitted to being present during the carjacking. He identified TATE as the driver of the Buick Regal and identified BENNETT and TATE as the gunmen in the incident. SEMONS advised that he was asleep in the rear seat of the Buick Regal and was awakened and told to drive off. SEMONS advised that he climbed into the front seat and drove away in the Buick Regal.

### Examination of Larry Semons's Phone

38. On September 14, 2022, pursuant to a State of Wisconsin search warrant, Milwaukee County District Attorney Investigator LaGosh conducted an extraction of the cell phone that was located on SEMONS's person at the time of his arrest.

39. An examination of the contents of the phone revealed a contact name of "Tay" with a phone number of **414-502-6877.**

40. Phone number **414-502-6877** was also associated with the applications Whatsapp under username "Tay" and Cash app under username "$lmgLivin" in SEMONS's phone. On January 10, 2022 and January 25, 2022, SEMONS initiated two payments to "$lmgLivin" of $30 and $35 respectively.

### Recovery of Nissan Rogue and Arrest of Deshawn Driver

41. On September 01, 2022, officers with the Bayside Police Department conducted a traffic stop on a black Nissan Rogue with no visible license plates. The driver of the vehicle was identified as Deshawn DRIVER (XX/XX/1999). During a routine check of the vehicle's VIN,

9

offices were notified that the Nissan Rogue was previously taken during a carjacking in the City of Milwaukee. DRIVER was subsequently placed under arrest by the Bayside Police Department. During the processing of the Nissan Rogue, a Glock 21 pistol with an extended magazine was located under the front passenger seat of the vehicle.

### Custodial Interview of Deshawn Driver

42. On September 02, 2022, detectives with the Milwaukee Police Department conducted a Mirandized interview with Deshawn DRIVER. DRIVER admitted to being the gunman in the August 29, 2022 carjacking of the Nissan Rogue and to driving away in the victim's vehicle. DRIVER advised that the Glock 21 pistol with the extended magazine that was previously recovered in the Nissan Rogue was the firearm that he used during the carjacking. Driver identified Larry SEMONS as the rear passenger and Terrence BENNETT as the driver of the Buick Regal during the carjacking. DRIVER told detectives that before he exited the Buick Regal to conduct the carjacking, BENNETT handed him the Glock 21 pistol that he used.

### Arrest and Custodial Interview of Kartiae TATE

43. On September 08, 2022, Kartiae TATE was arrested by detectives with the Milwaukee Police Department during the execution of a search warrant at his residence at XXXX N 20th Street, Milwaukee, Wisconsin.

44. During the search of TATE's residence, detectives located under a cushion of the living room sofa a .223 AR style pistol. The lower unit of the firearm was manufactured by EP Armory and the upper unit was unserialized and did not have a manufacturer listed.

45. Detectives with the Milwaukee Police Department then conducted Mirandized interviews of TATE over the following days. TATE admitted to being the driver of the Buick Regal during the August 26, 2022 carjacking of the Nissan Altima. TATE advised that Terrence

10

Case 2:22-mj-00207-WED    Filed 12/16/22    Page 11 of 16    Document 1

BENNETT was sitting in the front seat and that Larry SEMONS was sitting in the rear seat before the carjacking took place. TATE advised that both BENNETT and SEMONS had firearms and that he was aware that the carjacking was going to take place.

46. TATE further admitted that the firearm that was located in his residence belonged to his cousin and that he had previously handled the firearm knowing that he is prohibited from possessing or handling firearms.

### Examination of TATE's Facebook Account

47. On November 16, 2022, pursuant to a search warrant out of the Eastern District of Wisconsin, this affiant reviewed account information provided by Meta Inc. for Facebook account "Livin Lashawn", an account associated with Kartiae TATE. Phone number **414-502-6877** was listed as a phone number on the account and was last verified by Facebook on November 15, 2022. Additionally, Livin Lashawn sent private messages to various Facebook accounts advising that his phone number was **414-502-6877**. The messages were sent from the time period of June 30, 2022 to July 15, 2022.

48. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless

device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

49. Based on my training and experience, I know that T-Mobile can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes

50. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **414-502-6877**, ("the Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

# ATTACHMENT B

## Particular Things to be Seized

**I.  Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period August 12, 2022 to September 12, 2022:

    a. The following subscriber and extended subscriber information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

2

Case 2:22-mj-00207-WED    Filed 12/16/22    Page 15 of 16    Document 1

    Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

  vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

  viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

 b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

  i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses; and

  ii. information regarding the cell towers and sectors through which the communications were sent and received; and

  iii. per call measurement and timing advance data (PCMD, RTT, True Call, NELOS, or similar)

**II. Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 18, United States Code, §§ 2119 (Carjacking), and 924(c) (use, brandishing, and discharge of a firearm during a crime of violence) involving Kartiae TATE, during the period August 12, 2022 to September 12, 2022.